```
                  UNITED STATES DISTRICT COURT
                           FOR THE
                     DISTRICT OF VERMONT

Clarence W. Lamore, Jr.,      :
                              :
        Plaintiff,            :
                              :
        v.                    :       Case No. 2:12-cv-59
                              :
State of Vermont, UVM         :
Police Department,            :
Jennifer M. McMahon,          :
Franklin County Guardian      :
Mary Beth, Christina          :
Johnson,                      :
                              :
        Defendants.           :
```

## OPINION AND ORDER
(Docs. 17, 19, 20, 21, 22, 24, 29, 30)

Plaintiff Clarence Lamore, proceeding *pro se*, brings this action claiming that he was mistreated by officers of the University of Vermont ("UVM") Police Department, and that he has been wrongfully deprived of his parental rights with respect to his two daughters.  Pending before the Court are several motions, including: Lamore's requests for appointment of counsel; his motions for final judgment; his motion for an arrest warrant; and a motion to dismiss filed by the UVM Police Department.  For the reasons set forth below, the UVM Police Department's motion is GRANTED, Lamore's motions are DENIED, and Lamore is granted leave to file an Amended Complaint.

Factual Background

Lamore's Complaint consists of three separate pleadings, each of which bears a state court caption and is accompanied a motion "to transfer case to the United States District Court." (Doc. 4 at 2, 17, 20.)[1] In the first, Lamore alleges that in May 2011 he was seated outside the UVM library when he was approached by two men, one of whom was an officer of the Chittenden County Sheriff's Department. The officer asked Lamore his name, and attempted to serve Lamore with a complaint for relief from abuse. The complaint was reportedly based upon an argument that occurred earlier that month between Lamore and his daughter. Lamore refused to sign the service papers and departed.

A few days later, Lamore was again at the UVM library

---

[1] While these motions could be construed as notices of removal, it is not clear that removal would be proper. The first two motions pertain to criminal cases, and while it is possible to remove a criminal prosecution to federal court under 28 U.S.C. § 1443, Lamore has not alleged whether, in the course of those proceedings, he is being denied a right "under any law providing for the equal civil rights of citizens of the United States" as required by that statute. 28 U.S.C. § 1443; see Johnson v. Mississippi, 421 U.S. 213, 219 (1975). The third motion pertains to a Family Court proceeding. Again, it is not clear that the requirements for removing a civil case have been met with regard to that proceeding. See 28 U.S.C. § 1446 (requiring timely removal by the defendant, as well as notice to adverse parties and the state court). The Court will therefore treat these filings as part of a unified, original Complaint, and not a series of removed actions.

when he was placed under arrest by three UVM police officers on a charge of unlawful trespass.  Lamore alleges in his Complaint that he protested the arrest, claiming "I do not have no trespassing on me here."  (Doc. 4 at 3.)  In the course of the arrest, the officers allegedly "plant[ed] [Lamore's] head into the flower bed," then walked him to their police car, "took all [his] property . . . and [h]umiliated [him] in public and took off [his] shoes and tr[ied] to force [his] pants down and feeling [his] privies."  *Id.*

Once arrested, Lamore was transported to the UVM Police Department, and thereafter to the Chittenden County Correctional Center.  At the Correctional Center, Lamore again protested his arrest and threatened to file a lawsuit "over this putting no trespassing on me like this with[]out me knowing about it."  *Id.*  He is now suing for "putting unlawful trespassing on Clarence Lamore Jr. with[]out Clarence knowing about this and [h]umiliat[ing] Clarence like this in public."  *Id.* at 4.

Lamore's second pleading depicts an argument he had with his daughter via telephone regarding information on his daughter's Facebook account.  For relief on this claim, he

3

seeks monetary damages from Defendants "Mary Beth" and Christina Johnson, at least one of whom appears to be a "guardian" in Franklin County, for "keeping [Lamore's] daughter away from her Father and her sister . . . ." *Id.* at 18-19.

The third pleading, bearing the caption of the Chittenden County Family Court, claims that testimony provided in a Family Court proceeding was false. Specifically, Lamore alleges that "[R]obin Mc[M]ahon [testified] about a black Pontiac Fiero[. I] don't own this car[.] [S]he made all this up to take my two daughters." In the concluding paragraph, Lamore states that he is filing a civil action against "the Chittenden [C]ounty Family children social services State of Vermont." *Id.* at 21-22.

Discussion

I.  UVM Police Department's Motion to Dismiss

The UVM Police Department construes Lamore's cause of action against it as a claim of unlawful arrest, and argues for dismissal pursuant to Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, the Complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570 (2007).  Although the Complaint's factual allegations are presumed true, this tenet is "inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Further, while *pro se* complaints must contain sufficient factual allegations to meet the plausibility standard, *see Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009), the Court must review *pro se* submissions with "special solicitude" and interpret them to raise the "strongest [claims] that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (emphasis in original) (internal quotation marks omitted).

Lamore is suing the UVM Police Department for "putting unlawful trespassing on" him, and for "humiliat[ing]" him in public.  (Doc. 4 at 4.)  For relief, he seeks damages for the two days he spent at the Chittenden County Correctional Center after his arrest.  The Court agrees with the UVM Police Department that, at least with respect the "putting unlawful trespass" claim, Lamore is alleging false arrest. In order to prevail on a claim for false arrest under 42 U.S.C. § 1983, Lamore must show that (1) the police intended to confine him, (2) he was conscious of the confinement, (3) he did not consent to the confinement, and (4) the

confinement was not otherwise privileged.  *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995)  An arrest is privileged if the officer had probable cause to believe that the person arrested committed a crime.  *See Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) ("[P]robable cause to arrest constitutes justification" for an arrest, precluding a false arrest claim).  A person who has been convicted of the crime for which he was arrested cannot state a claim for false arrest because his conviction establishes that his confinement was grounded on probable cause.  *See Cameron v. Fogarty*, 806 F.2d 380, 388-89 (2d Cir. 1986).

The UVM Police Department has submitted to the Court a certified copy of the criminal docket from Lamore's unlawful trespass case, which shows that Lamore was ultimately convicted on the trespass charge.  (Doc. 19-1 at 2.)  While a court generally cannot review documents outside the pleadings on a Rule 12(b)(6) motion, it may nonetheless consider "matters of which judicial notice may be taken." *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).  Federal Rule of Evidence 201(b) provides that "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known

within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201(b).  The Second Circuit has observed that court records, such as a court docket, qualify for judicial notice.  *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) ("[D]ocket sheets are public records of which the court could take judicial notice."); *see also Shmueli v. City of N.Y.*, 424 F .3d 231, 233 (2d Cir. 2005) ("The New York State . . . prosecution of Shmueli is a matter of public record, of which we take judicial notice.").  The Court may therefore consider the state court criminal docket.

The docket sheet from the Chittenden Criminal Division indicates that Lamore was arrested for misdemeanor criminal trespass on May 24, 2011.  Judge Levitt found probable cause, and on May 25, 2011, Lamore entered a guilty plea. (Doc. 19-1 at 2.)  Because Lamore was ultimately convicted on the charge of unlawful trespass, his claim of false arrest cannot stand.  *See Cameron*, 806 F.2d at 388-89; *Corbett v. Dwyer*, 345 F. Supp. 2d 237, 241 (N.D.N.Y. 2004) (dismissing a § 1983 false arrest claim after plaintiff pled

7

guilty and was convicted on underlying criminal charges); *Johnston v. Town of Greece*, 983 F. Supp. 348, 359 (W.D.N.Y. 1997) (dismissing plaintiff's false arrest claim because he pled guilty to the crime for which he was arrested).  The UVM Police Department's motion to dismiss Lamore's false arrest claim is therefore GRANTED.

Lamore also claims that he was humiliated in the course of his arrest when UVM police allegedly searched him, forced him to remove his shoes, felt his "privies," and tried to pull down his pants.  (Doc. 4 at 3.)  Construing the Complaint liberally, these claims challenge the scope and manner of the search.  Perhaps because they are not plainly alleged, the UVM Police Department has not addressed such potential claims.

"Under the Fourth . . . Amendment[ ], an arresting officer may, without a warrant, search a person validly arrested."  *Michigan v. DeFillippo*, 443 U.S. 31, 35 (1979).  "The fact of a lawful arrest, standing alone, authorizes a search."  *Id.*; *see also United States v. Guadalupe*, 363 F. Supp. 2d 79, 83 (D. Conn. 2004).  However, the scope and manner of the search is not unlimited.  *See Bell v. Wolfish*, 441 U.S. 520, 559 (1979); *see also Tennessee v. Garner*, 471

U.S. 1, 8 (1985) (reasonableness of a search under the Fourth Amendment "depends on not only when a seizure is made, but also how it is carried out"); *Swain v. Spinney*, 117 F.3d 1, 6 (1st Cir. 1997) (observing that "not . . . all possible searches of an arrestee's body are automatically permissible as a search incident to arrest"). For instance, a strip search of a misdemeanor arrestee is likely unlawful absent "reasonable suspicion that the arrestee is concealing weapons or other contraband based on the crime charged, the particular characteristics of the arrestee, and/or the circumstances of the arrest." *Weber v. Dell*, 804 F.2d 796, 802 (2d Cir. 1986); *see also Hartline v. Gallo*, 546 F.3d 95, 100 (2d Cir. 2008); *Wilson v. Aquino*, 233 F. App'x 73, 76 (2d Cir. 2007) (noting that a strip search requires "particular justification").[2] Less intrusive searches do not require such additional justification. *See United States v. Robinson*, 414 U.S. 218, 235 (1973) (holding that a "full search of the person" during a custodial arrest "based

---

[2] The Supreme Court recently held that officials may strip search any arrestee before admitting her to jail, even absent any reasonable suspicion. *Florence v. Board of Chosen Freeholders of County of Burlington*, 132 S. Ct. 1510 (2012). The Court's holding has been characterized as "narrow," and "the Second Circuit has yet to announce the impact (if any) *Florence* has on the individualized suspicion requirement." *Ellsworth v. Wachtel*, 2013 WL 140342, at *5 (N.D.N.Y. Jan. 11, 2013).

on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification.").

The search described by Lamore was not a strip search, and was more in the nature of a standard pat-down. The search, conducted prior to Lamore's transport to the UVM Police Department, required removal of his shoes and allegedly involved contact with his genitals. It has been held that "routine pat-down searches, even if they include the groin area, do not violate the Constitution . . . ." *Cherney v. City of Burnsville*, 2008 WL 108964, at *7 (D. Minn. Jan. 8, 2008). Indeed, the Supreme Court has long recognized that a search of a suspect may consist of "a careful exploration of the outer surfaces of a person's clothing all over his or her body . . . [including] arms and armpits, wasteline and back, the groin area about the testicles, and entire surface of the legs down to the feet." *Terry v. Ohio*, 392 U.S. 1, 16, 17 n.13 (1968). The *Terry* decision also acknowledged that such searches may be "humiliating." *Id.* at 25. However, "[n]ot every embarrassment, humiliation, or psychological discomfort amounts to a constitutional violation." *Arnold v.*

10

*Westchester Cnty.*, 2012 WL 336129, at *11 (S.D.N.Y. Feb. 3, 2012). Accordingly, the facts alleged in the Complaint may not rise to the level of a Fourth Amendment claim.

The Court next considers whether Lamore should be given an opportunity to re-plead. The Second Circuit has emphasized that a "court should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citations and internal quotation marks omitted). Under Rule 15(a) of the Federal Rules of Civil Procedure, the "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). Although Lamore's false arrest allegation does not currently state a plausible claim, and his contentions about an illegal search are questionable, there is some "indication" that "a valid claim might be stated." *Cuoco*, 222 F.3d at 112. The Court will therefore allow Lamore thirty days in which to submit an Amended Complaint, as more fully set forth below.

II. <u>Lamore's Motions for Entry of Final Judgment</u>

Also before the Court are Lamore's two motions for

11

final judgment. The first such motion seeks a final judgment against "Skyler Genest 554, Robert Bailey 545, Mandy Wooster 555." (Doc. 20 at 1.) The motion states that "[b]y agreement of the parties, the Final Judgment provides for the payment of a civil penalty totaling $100,000 by defendant pursuant to 42 U.S.C. § 1983 . . . [for] unlawful arrest." *Id.* The UVM Police Department has filed an opposition, stating that "the University has not stipulated to the entry of a final judgment in Plaintiff's favor, nor has the University agreed to any other settlement offer. In fact, the University has not engaged in any communication with Plaintiff regarding settlement or any other resolution of Plaintiff's claims." (Doc. 23 at 2) (emphasis in original). The Court also notes that Genest, Bailey and Wooster are not parties in this case. In light of the University's representations to the Court, the lack of any filed stipulation, and the fact that Lamore is moving for a judgment against non-parties, his first motion for entry of final judgment (Doc. 20) is DENIED.

Lamore's second motion for entry of final judgment is brought against "Jennifer, State of Vermont." (Doc. 21 at 1.) The "Jennifer" referenced in Lamore's pleading appears

to be Lamore's daughter.  Lamore again claims in his motion that "[b]y agreement of the parties, the Final Judgment provides settlement for . . . and payment of a civil penalty totaling $1,500,000, by defendant . . . ."  *Id.*  However, no stipulation has been filed with the Court, and Lamore has not established any other legal basis for entering a judgment against "Jennifer."  Therefore, the second motion for final judgment (Doc. 21) is also DENIED.

III.   <u>Motions for Appointment of Counsel</u>

Lamore has filed two motions for appointment of counsel.  (Docs. 17, 30.)  In each motion, he states that has "made a diligent effort" to obtain counsel by contacting legal aid organizations and various attorneys.  *Id.*  There is no constitutional right to appointment of counsel for litigants in civil cases.  *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 172-74 (2d Cir. 1989).  District courts nevertheless have "[b]road discretion . . . in deciding whether to appoint counsel."  *Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986); *see also* 28 U.S.C. § 1915(e)(1) (providing district courts may "request an attorney to represent any person unable to afford counsel.").  In considering a motion for appointment of counsel, a district

13

court "should first determine whether the indigent's position [is] likely to be of substance." *Cooper*, 877 F.2d at 172 (internal quotation marks omitted). Upon satisfying this threshold requirement, the district court considers secondary factors, including the "plaintiff's ability to obtain representation independently, and his ability to handle the case without assistance in . . . light of the required factual investigation, the complexity of the legal issues, and the need for expertly conducted cross-examination to test veracity." *Id.* No single factor is controlling in a particular case, as "each case must be decided on its own facts." *Hodge*, 802 F.2d at 61.

In this case, it is not clear that Lamore's claims have sufficient merit to warrant consideration of the secondary factors. His allegations against the UVM Police Department may not set forth viable constitutional claims, as discussed above. The second portion of his Complaint brings suit against two defendants, one of whom is alleged to be a "guardian," for "keeping my daughter Jennifer [a]way from her father and her sister Christina." (Doc. 4 at 19.) It is not clear whether either of the Defendants named in this portion of Lamore's pleadings is a state actor subject to

suit under 42 U.S.C. § 1983. *Elmasri v. England*, 111 F. Supp. 2d 212, 221 (E.D.N.Y. 2000) ("[G]uardians *ad litem*, although appointed by the court, exercise independent professional judgment in the interests of the clients they represent and are therefore not state actors for the purposes of Section 1983."). Furthermore, revisiting issues related to Lamore's rights with respect to his daughter may be barred by the domestic relations exception to federal court jurisdiction. *See Neustein v. Orbach*, 732 F. Supp. 333, 339 (E.D.N.Y. 1990) (action barred by domestic relations exception if, "in resolving the issues presented, the federal court becomes embroiled in factual disputes concerning custody and visitation matters . . ."). These claims thus do not support the appointment of *pro bono* counsel.

The final portion of the Complaint calls into question the credibility of evidence presented in a Vermont family court proceeding. The defendant on this claim appears to be "the Chittenden [C]ounty Family [C]hildren [S]ocial [S]ervices State of Vermont." (Doc. 4 at 22.) If the sole Defendant is, in fact, a state agency, it is entitled to dismissal under the Eleventh Amendment as set forth in the

State of Vermont's prior motion to dismiss, which was granted by the Court on November 6, 2012.  (Doc. 12); *see Alabama v. Pugh*, 438 U.S. 781, 781 (1978) ("[T]he Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies.").

Even if Lamore were able to demonstrate that his claims have sufficient merit for the court to request *pro bono* counsel, he has not demonstrated an inability to handle his case without assistance, or that the legal issues being presented are so complex as to warrant a free attorney.  Nor has he shown that cross-examination will be an important part of his case.  The motions for appointment of counsel (Docs. 17, 30) are therefore DENIED.

IV. <u>Remaining Motions</u>

Lamore has three other motions pending before the Court: a motion "for court orders"; a motion entitled "I motion the Court"; and a motion for an arrest warrant.  (Docs. 22, 24, 29.)  The first of these motions asks the Court to compel the state court to provide Lamore with "case papers" from a state family court proceeding, including "all Jennifer McMahon case records and financial records."  (Doc. 22 at 1.)  Lamore cites no federal law ground for accessing

16

such records.  More specifically, he offers no authority by which this Court might compel a state court to produce records, particularly financial records of a third party. The first motion (Doc. 22) is therefore DENIED.

The second motion, entitled "I Motion The Court," explains that "plaintiff seeks a legal remedy, and if successful, the court will issue judgment in favor of the plaintiff and make the appropriate court order (*e.g.* an order for damages)."  (Doc. 24 at 1.)  The motion then sets forth a series of rules pertaining to appeals.  As this case is not on appeal, those rules do not yet apply, and the motion (Doc. 24) is DENIED.

The final motion seeks an arrest warrant for Robin Bryant on a charge of perjury.  A private person has no right to obtain an arrest warrant, or to compel the prosecution of another.  *See Town of Castle Rock v. Gonzales*, 545 U.S. 748, 766 n.12 (2005) (noting that "needless to say, a private person would not have the power to obtain an arrest warrant"); *Leeke v. Timmerman*, 454 U.S. 83, 86-87 (1981) ("a private citizen lacks the judicially cognizable interest in the prosecution or nonprosecution of another"); *see also McCrary v. County of Nassau*, 493 F.

Supp. 2d 581, 588 (E.D.N.Y. 2007) ("A private citizen does not have a constitutional right to compel government officials to arrest or prosecute another person."). The motion for an arrest warrant (Doc. 29) is therefore DENIED.

V.  Amending the Complaint

As discussed above, Lamore's claim against the UVM Police Department is being dismissed with leave to amend, in part for the purpose of clarifying any claim he may be bringing with respect to the scope of the search incident to arrest. Lamore is also now on notice that his remaining claims are of questionable merit, in part because the basis for federal court jurisdiction over non-state actors and state Family Court proceedings has not been established. All remaining claims in this case, if not amended, may be subject to dismissal either on a motion by a Defendant or by the Court *sua sponte*. *See Mallard v. United States District Court*, 490 U.S. 296, 307-08 (1989) ("Section 1915(d) [of Title 28] . . . authorizes courts to dismiss a 'frivolous or malicious' action, but there is little doubt they would have power to do so even in the absence of this statutory provision."); *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 107-08 (2d Cir. 1997)

(court may raise the issue of subject matter jurisdiction *sua sponte* at any time); *see also, e.g., Univ. of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999) ("it is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking").

If Lamore chooses to file an Amended Complaint, he must do so within thirty days. The Amended Complaint must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure, and will completely replace the initial Complaint. *See Arce v. Walker*, 139 F.3d 329, 332 n.4 (2d Cir. 1998) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect."). Accordingly, **the Amended Complaint must include all of the allegations Lamore intends to bring against each of the Defendants. If Lamore fails to file an Amended Complaint within thirty days, his false arrest claim against the UVM Police Department will be dismissed with prejudice, and the Court may dismiss any and all remaining claims for lack of jurisdiction or on their merits**. *See Transatlantic Marine Claims Agency, Inc.*, 109 F.3d at 107-08; *see also Mallard*, 490 U.S. at 307-08.

## Conclusion

For the reasons set forth above, the UVM Police Department's motion to dismiss (Doc. 19) is GRANTED with respect to Lamore's false arrest claim, and Lamore's pending motions (Docs. 17, 20, 21, 22, 24, 29, 30) are DENIED. Lamore is granted leave to file an Amended Complaint within thirty days of this Opinion and Order.

Dated at Burlington, in the District of Vermont, this 11th day of July, 2013.

/s/ William K. Sessions III
William K. Sessions III
Judge, United States District Court